The first case is Francis Bladimar Avila Alfaro v. Garland, and that's been submitted on the briefs. That's 22-2041. The next case is 23-44 Xixing Fa v. Garland, and that has also been submitted on the briefs. So the first case we'll hear for argument will be Oceanside Health Products v. DVIR DERI. And I notice that both this case and the following case are represented by the same attorneys. So how do you want to handle this? Do you want to argue DVIR DERI as a separate case, or do you want to argue both cases at the same time? Your Honors, I think the analysis is identical, so it makes sense, I think, to take them up at the same time. So in that case, we'll allocate 20 minutes to each side, right? Can you do that? And we'll take the cases as consolidated cases, all right? Is that okay with you folks? All right. So we'll proceed that way. Go ahead. I don't believe I need the full 20 minutes. I'd like to reserve the remaining time for when I'm done. Good morning, Your Honors, and happy Friday. May it please the Court, my name is Jared Tofer on behalf of Appellant Oceanside Health Products, LLC. Oceanside would submit that the only issue properly before the Court today is a relatively straightforward personal jurisdiction issue. And that is simply whether, in both cases, the District Court erred in finding that there was no express aiming established under the Calder Effects Test. Was that the sole basis upon which the District Court made its finding? My reading of both decisions is that, yes, that was the basis. In the DeVere DeRee case, the District Court did not address the remaining elements of the specific jurisdiction analysis. And in Stock Goody's case, while the judge did address the intentional ax prong of the Calder Effects Test, it did not specifically address the other elements of the specific jurisdiction analysis. So, as I understand the decisions of Judge Carey and the District Court, he did not deal at all with the third element of the Calder case, which is an allegation that the defendant knew that harm would be caused to the plaintiff in the state of California. Is that correct? That's correct. What do we do with that? Well, I would submit, Your Honor, that in both cases we've submitted evidence that cease and desist letters were sent from our client in California to the defendants, that they were unnoticed, that they were engaged in conduct that was harming our client in California. The letters themselves don't seem to have any reference to your head offices being in California. Is there something I'm missing? Well, the evidence that actual letters were not in the record, because the legal brackets obviously came down after these cases were submitted, but what is in the record is that a declaration from our client that letters were sent from California to the defendants. And then also, it's evident in the record that our client is California LLC, and his principal place of business is in California. That is alleged in the complaint. The problem I have is as to the third element of the Calder case, which seems to have been ignored in the district court, and wasn't argued by either party, and what do we do with that? Because the Herbal Brands case sort of takes care of the basis upon which the district court ruled. Herbal Brands, as I understand it, says if you advertise on a nationwide internet marketing platform, that's sufficient evidence of express aiming in California. If that's so, if the only basis for dismissing the complaint were the second basis of the Calder test, then we'd have to say the law has changed, and the appellant should prevail on his appeal, and we should remand it for further proceedings. But on the other hand, if the third element is not alleged at all, how do we deal with that? Well, Your Honor, I guess I disagree. The record that complained itself, let me pull it up here, does specifically allege, in the excerpts of Record 125, that Oceanside is a limited liability company existing under the laws of California, with its office located in Orange, California. And then there were declarations submitted below with, I'm sure it's ER 125, Paragraph 4. Paragraph 4, I was looking for that this morning, and let's see. It is, yeah, Paragraph 4. You read it correctly. So if the basis of the complaint is that the defendants are selling product as to which Oceanside, as the exclusive distributor, has trademark rights, and they're violating trademark protection, the loss to the plaintiff is the loss of sales, the confusion among the parties, among the buyers. And that loss is probably realized at its head office when the revenue drops. That's correct, Your Honor. So that being so, I don't know what else you have to argue. Yeah, I would agree, Your Honor. I believe Herbal Brands is dispositive. I think that's what we've said. Obviously, it was an intervening case that came down after the decisions of both district courts. The only other last piece I'd like to add on the issue of the cease and desist letters, is there are declarations submitted that they were sent from California in the DeVere Dury case. Both the client itself declared that they sent it from their offices in California, and then also our office sent a cease and desist letter from our Irvine office in California. That's in the record. And if there's any question at all on that because neither district court addressed it, we would ask that an amendment be remanded so that those issues can be fully addressed in the record addressed below. You didn't request an amendment in the district court? We didn't request an amendment. We did request jurisdictional discovery to the extent that there were issues such as that that needed to be addressed because I'm confident that through jurisdictional discovery, those issues will be fully vetted and in our favor. For that to be done, are you just saying if you're about to lose, that's what you want? Well, I think under the record submitted that we should prevail. So, yeah, I'll submit on that. But if there's any issues at all with respect to any other issues of jurisdiction that were not addressed with the district courts in the first instance, I'm suggesting that those should be remanded so that the record can be fully addressed below. And with that, I'll reserve the rest of my time. Commissioner Dell. Yes. Good morning, Your Honors. Tyler Dell, Dell, Tartar, Gritsky, and Drogon for the Appellees, Devere Dairy, and In-Stock Biddies. There are a couple of issues that I think the court has keyed in on the crucial ones here. However, there are some material differences between our case and the Herbal Brands case, which are crucial. And the Herbal Brands case left open the question as to whether or not evidentiary testifies would be sufficient to establish personal jurisdiction. And that's the key issue here in the Herbal Brands case. If you want to go faster, then I really won't understand a word you're saying. I apologize, Your Honor. So to start over, there are some key factual issues between our case and the Herbal Brands case. There they are. And the Herbal Brands case left open the question as to whether or not evidentiary testifies would be sufficient to establish jurisdiction or not. That is the key issue here, which is that the complaints at issue only, they don't say anything about sales into California. Only as part of the opposition did they say that there were a number of evidentiary testifies. In one case, there were two pre-litigation testifies. And in the other case, there were four pre-litigation testifies. In the Herbal Brands case, the complaint alleged that over a period of years, 22,000 products were sold into Arizona at a sales price of over $630,000. That's a material difference because those sales were made to third parties, actual legitimate purchasers, other than the plaintiff. So I think that your position is that since the complaints in these cases have not alleged large-scale sales in California by the defendants, but only test-by sales, right? The test-by sales are not sufficient to show aiming. That's correct. Under Walden, the testifies are based on the plaintiff's contacts with the forum, not the defendant's contacts with the forum. And under Walden, we have to focus on what the defendant did to target the forum, not the plaintiff's contacts with the forum. So by only alleging that there were evidentiary test-bys, all that shows is that the plaintiff was in California and they ordered products to California. It doesn't say that there have been any other sales to California, nor that there has been any express aiming at California by either of the appellees. All right. You have some time for a moment to deal with that. All right. The second issue, as the court addressed, is whether or not the appellees were aware that there would be any harm suffered in California. And, again, there's a material difference between the Herbal Brands case and this case because in Herbal Brands, the complaint specifically alleged that a number of cease-and-desist letters were sent to the defendants and were specifically advising the defendants that if they continued to sell, harm would be suffered in California. That's not part of the record here. They have said that they sent cease-and-desist letters, which advise of the relationship between Oceanside and Detoxify, but they don't say that the letters said, stop selling in California, nor do they say that harm would be suffered in California. And it's quite a leap to say, oh, the defendant should have known that harm would be suffered in California because the letters were sent from California. There's quite a difference there. There's no express disclosure that harm would be suffered in California, nor is there an express stop selling into California. And there's no allegations that the defendants knew that their selling in California would cause damages in California. That's correct. That is not part of the record. There are allegations regarding the cause of confusion among buyers in California, but, of course, the buyers are not parties to this case. So what you're saying is that there's a lack of an essential element, that is the allegation that the defendants knew that there were sales in California which would harm the plaintiffs in California. That's correct. And other than the evidentiary test buys, there's no allegations that there were any other sales into California. Other than the test buys? Other than the six pre-litigation test buys, and I believe one post-litigation in each matter. Don't we have a case of saying that the test buys by themselves are not sufficient? Not in the Ninth Circuit. There are quite a number of district court decisions, which we've briefed extensively, saying that evidentiary test buys are not sufficient, but there's no binding authority on this court saying that. Okay. You wouldn't mind us finding that? I would not mind you finding that at all. Okay. Turning to the next element, which was unaddressed by either of the district courts here, because I stopped at the first or the second element of the Calder test, is reasonableness. And the exercise of jurisdiction always has to be reasonable. And because this court is looking at this de novo, the court can consider the evidence submitted by the appellees, which in one case say that the appellee is located exclusively in New York. They do business out of Brooklyn. And then the other is located in New Jersey, and they do business out of New Jersey. In neither case are there any contacts with California besides the posting of these listings on Amazon. They don't have real estate here. They don't pay taxes here. They don't have employees here. They don't advertise here. There's no connection with California other than the evidentiary test buys. This was all before the district court? Yes, Your Honor. Unfortunately, the court stopped its analysis at expressing it did not address reasonableness. That's correct. And there's no reason to think that the Second and Third Circuits couldn't handle this litigation. The plaintiff alleges that they have a national license to enforce these trademarks. They should be prepared to litigate these on a national basis. They shouldn't be just making limited evidentiary test buys and then dragging sellers in from across the country to litigate in California. How do you stand on the suggestion by your learned friend that he be allowed to amend the complaint to allege these missing facts? He should have requested it. Their throwaway argument was let us do jurisdictional discovery, which is reviewed on an abusive discretion standard, and they have to specifically state what facts, contracts, transactions, they're going to find through jurisdictional discovery. And they didn't do that? They didn't do that. All they said was if you're inclined to grant these motions to dismiss, let us do jurisdictional discovery because we think we might find something. Under Boschetto, or Boschetto, I'm not sure exactly how to pronounce it, that's clearly not the standard. They have to be very specific in stating what it is that they expect to find. Okay. And just one other point on that is that the complaints here don't allege that the defendants targeted California. They allege that the listings were for the U.S. national marketplace, not a California-specific marketplace. So to the extent that they're going to allege that my clients specifically targeted California, they'd be contradicting their own allegations because they've already alleged that it's a national marketplace, not a California-specific marketplace. Okay. Anything else? Is your idea that they should have found suit in New York or New Jersey or someplace like that? That's exactly correct. They knew where we were, and they purport to maintain a national license. So they should expect to come to wherever the torque phasers are in a small-volume case like this. If it were like Herbal Brands and they had allegations that there were tens of thousands of sales into California worth hundreds of thousands or millions of dollars, then I think we'd be having a very different conversation. How do we know what the size of the claim is? Well, in Herbal Brands, they employed pre-litigation tracking software to determine. But how do we know from this complaint what the size of the claim is? We don't. There's no allegation? There's no allegation. So that's how many sales they're talking about? No. All right. Yeah, all we know is that there were six evidentiary test buys across both cases pre-litigation. Okay. Okay. If Your Honor has no further questions. I can't think of any. All right. Thank you very much. I'll be brief, but would like to just quickly address a few points that counsel made. With respect to the evidentiary test buy issue, I'd just like to point out that Herbal Brands actually addressed a very similar issue. In Herbal Brands, like here, the complaint alleged that there were regular shipments and sales into the forum. And in Herbal Brands, like here, they did not have the exact sales data, so they were unable to allege the exact numbers of sales made to Arizona. That's Herbal at 1089 is the site. And like in Herbal Brands here, the declaration submitted by counsel's client did not contradict the fact that sales were, in fact, made into California. There's a lot of other things about not doing business or not having business locations in California, et cetera, but there's not a single allegation on either declaration submitted with both matters that they didn't sell into California because I submit that they surely did, which is evident by the test buys. And here, our client submitted evidence. Not only the product was actually shipped and sold into California through the test buys, but through the fulfillment by Amazon service, they are not capable of turning off which states the sales go to. And in addition to that, because they're selling in California, they're necessarily having inventory stored in California. That's the fulfillment by Amazon analysis that was done in Herbal Brands, and it's also supported by declarations we submitted from our client with knowledge of those policies and procedures. With respect, going back to the issue of the harm being suffered in California, we cited several cases. It stands for the proposition that it's foreseeable that harm will occur if the principal place of business is in California. And that's what the case is here. Oceanside's principal place of business is California. Cease and desist letters were sent by Oceanside to both defendants. What you're saying is your allegation that with its office located in Orange, California, it's office, single office, that is an allegation of principal place of business. Yes, and that when you get a letter from Oceanside, which both defendants did, saying, please stop your torturous conduct, they can see that Oceanside does business in California. That's its only office. And I'll point the court to two cases that we cited, Entrepreneur Media and Dole Foods. Dole Foods says, quote, when a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the effects test permits the forum to exercise personal jurisdiction. So the idea that it was at least foreseeable that they were causing harm in California, I think,  And then finally, with respect to the reasonableness prong, Herbal Brands also addressed the test by issue with respect to that, and it said that the test by issue really in manufacturing, quote, unquote, manufacturing jurisdiction is really a reasonableness inquiry that the court should decide in that prong of the analysis. It has nothing to do with the express aiming prong anymore. In fact, Herbal Brands specifically found that the outcome of express aiming does not depend on the number of sales made to customers in the forum. That's Herbal at 1095. So I would submit that if there's issues with respect to reasonableness, which was not addressed by either district court below, that that should be remanded to be addressed at the district court level in the first instance. Let me ask you this. It bothers me that you didn't make a motion to leave to amend your complaint when there was a 12b-2 motion to dismiss, and in your request for discovery, there's no specific grounds that you wish to discover. Our local rules, at least in the central district, require that a plaintiff making an opposition to a motion to dismiss when he wants to leave to amend should state what he wants to say in the amendment, and if he's seeking discovery, he's got to say what he wants to discover. You didn't do that. Why should we let you do it now? Well, first of all, I would submit that the record is sufficient under Herbal Brands to establish personal jurisdiction, which we believed in the first instance. The allegations are there. The evidence was submitted on the jurisdiction motion that supports the exercise of jurisdiction and, in particular, express aiming, especially under the Herbal Brands decision. So at the time, I don't believe there was a belief that an amendment was necessary. You knew that Herbal Brands was coming down. Well, we knew that Herbal Brands was pending. We obviously didn't know what the actual decision was going to say. But obviously, Herbal Brands now provides additional insight into the various elements of the analysis. So what do we do with the lack of request for leave to amend and the lack of specificity as to the request for discovery? Well, we indicated that we believed we met the burden to establish personal jurisdiction below and said if there's any open issues, we should have the right to conduct discovery. I think the cases say, well, it's not really an open issue as to whether you alleged intentional harm in California because the district court didn't deal with that element at all. That's right. But on the discovery, there's the Revsky case that says the court abuses discretion when discovery might well demonstrate facts sufficient to constitute basis for jurisdiction. And in both instances, the district court denied the request for discovery because Herbal Brands hadn't come down and it didn't believe there was any coverable argument that we had jurisdiction based on the express aim and prompt. All right. Thank you very much. Thank you, Your Honor. All right. The court thanks both parties for a very direct and specific argument. Thank you very much. Thank you. And to both cases, both Oceanside Health Products versus Dairy LLC and Oceanside Health Products versus In-Stock Goodies, numbers 23-55-481 and 23-55-482 are submitted. Thank you, gentlemen.
judges: Siler, GOULD, BEA